# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSE GUERRA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security<br><br>　　　　　Defendant.<br>_____/ | Case No. 1:15-cv-01408-SKO<br><br>ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>(Doc. 1) |

## I.　　INTRODUCTION

On September 17, 2015, Plaintiff Jesse Guerra ("Plaintiff") filed a complaint under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for disability insurance benefits ("DIB"). (Doc. 1.) The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

## II.　　BACKGROUND

Plaintiff was born on January 7, 1954, and is currently 62 years old. (Administrative

---

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (Docs. 6, 8.)

Record ("AR") 60.) On April 15, 2010, Plaintiff filed a claim for DIB payments, alleging he became disabled on April 30, 2006, due to an aneurism of the heart and arthritis. (AR 26, 30, 136, 278.) From 1994 until April 2006, Plaintiff was a warehouse supervisor. (AR 114.) Plaintiff worked at a print shop at San Joaquin Hospital from November 2009 to May 3, 2010. (AR 70, 280, 307.)

### A. Plaintiff's Work History Report

On August 25, 2010, Plaintiff completed a work history report. (AR 307-318.) From 1994 to April 2006, Plaintiff was a warehouse supervisor for a cable company. (AR 307.) From November 2008 to December 2008, Plaintiff counted mail-in voter ballots, and from October 2009 to November 2009, Plaintiff was a "canvasser" for the U.S. Census Bureau. (AR 308-09.)

From November 2009 to May 3, 2010, Plaintiff worked at the print shop at San Joaquin Hospital. (AR 307.) Plaintiff worked eight hours per day, five days per week, and his rate of pay was $8.00 per hour. (AR 311.) Plaintiff's "[p]rimary duties were to print and assemble forms and other documents required by different depts. for hospital use." (AR 311.) In this job, Plaintiff reported walking two hours per day; standing four hours per day; sitting two hours per day; stooping one hour per day; and writing, typing, or handling small objects eight hours per day. (AR 311.) Plaintiff reports that the heaviest weight he lifted was 60 pounds, and that he frequently lifted 25 pounds. (AR 311.)

### B. Administrative Proceedings

Plaintiff filed an application for DIB on April 15, 2010, alleging he became disabled on April 30, 2006. (AR 26, 30, 136, 278.) The agency denied Plaintiff's applications for benefits initially on October 4, 2010, and again on reconsideration on March 8, 2011. (AR 153-56, 160-64.) Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 165-66.) A hearing was held on November 3, 2011, before an ALJ. (AR 88-127.) The ALJ issued a decision on November 17, 2011, finding Plaintiff not disabled. (AR 133-147.) Plaintiff sought review of the ALJ's decision before the Appeals Council (AR 217-19), which was granted (AR 148-152). On July 5, 2013, the Appeals Council remanded the case to the ALJ to obtain supplemental vocational expert testimony concerning Plaintiff's assessed limitations, to

clarify when Plaintiff worked at the hospital print shop and whether that work was performed at the substantial gainful activity level, to obtain updated mental health treatment records and clarification of Plaintiff's assessed mental health impairment and mental residual functional capacity, and to address whether obesity is a severe impairment of Plaintiff's.  (AR 148-52.)  In its order remanding the case back to the ALJ, the Appeals Council noted regarding Plaintiff's work at the hospital print shop that "if this job was performed at the print shop location, which did not begin until November 2009 (Exhibit 1E), it cannot be considered past relevant work for periods at issue before [Plaintiff] ever performed it."  (AR 149.)

Upon remand, on November 6, 2013, the ALJ conducted a second hearing.  (AR 42-81.)  At the November 2013 hearing, Plaintiff appeared with a non-attorney representative.  (AR 42-81.)

### 1.     Plaintiff's Testimony at the November 2011 Hearing

Plaintiff testified about his symptoms and limitations at the hearing.  Plaintiff stated that he was not able to do the physical work he was able to do and he lacked the skills to be hired in an office environment.  (AR 103.)  Plaintiff testified that he was unable to do the lifting and the walking that he used to do due to the worsening condition of his knees, the swelling of his feet, and shortness of breath.  (AR 103.)  Plaintiff testified that he had pain in both knees every day.  (AR 104.)  Plaintiff took Vicodin and Soma (muscle relaxant) once a week.  (AR 105.)  He stated that he had chest pains "infrequently," about twice a month.  (AR 105.)  Plaintiff testified that he could walk a block without stopping, and then resume 10 to 15 minutes later.  (AR 108.)  Plaintiff testified that he could stand for a half an hour without feeling lightheaded and could lift and carry 10 pounds.  (AR 108.)  Plaintiff cooked meals for the week, did dishes, and vacuumed.  (AR 111.)   Plaintiff testified that he could no longer do yard work since 2008.  (AR 111.)  Plaintiff stated that he hadn't seen his cardiologist for "a couple of years – possibly longer."  (AR 111.)

### 2.     Plaintiff's Testimony at the November 2013 Hearing

Plaintiff also testified at a second hearing in November 2013.  Plaintiff testified he was 59 years old at the time of the hearing.  (AR 60.)  Plaintiff testified that he was not working

because he felt dizzy and lightheaded for "short periods of time," or up to an hour, and was unstable on his feet. (AR 61). He said he had not had chest pains in about six weeks. (AR 62.) Plaintiff said he had knee pain every day, used a cane if walking more than a block, and was limited in his walking due to knee pain and an enlarged prostate, for which he took Flomax. (AR 63-64).

Plaintiff testified that he had taken Vicodin and Soma for his knee pain, though not daily, for about two or three years prior. (AR 71.). He said he had never had knee injections, nor had his physician discussed the possibility of a knee replacement or referred him to an orthopedic surgeon. (AR 71-72.) Plaintiff testified that he could normally stand about half an hour before having to sit down, walk around, or lie down, and that he could lift and carry fifteen to twenty pounds. (AR 64.) He said he did household chores such as vacuuming, laundry, washing dishes, and cooking, but did not do them as regularly as he would like and usually took breaks in between activities. (AR 66.) Plaintiff testified that he no longer does any yard work because he is unstable on his feet. (AR 67.)

Plaintiff testified he had trouble sleeping due to anxiety, for which he took Ativan and Lexapro. (AR 64-65.). He said being around groups of people or in unfamiliar situations triggered his anxiety, but that the medication, which was effective within a half hour, helped the anxiety. (AR 65, 69.) Plaintiff said an internist prescribed Ativan, which he had taken for about ten years. (AR 67-68.) He said he was not receiving any other mental health treatment such as counseling or therapy due to finances. (AR 67.) Plaintiff stated that he saw his internist every four months or so and last saw a cardiologist in 2007. (AR 72.)

With respect to his past work, Plaintiff testified that he worked at a hospital print shop full time for six months doing "high speed copying": making copies of the forms that the hospital used, making scratch pads and laminating materials. (AR 70.) Plaintiff said he did this work eight hours a day, five days a week, and was paid $8.00 per hour. (AR 70.) Plaintiff was responsible for "loading the machines up and running the prints," meaning Plaintiff would take the reams of paper out of a case and load a one ream of paper at a time into the machine. (AR 74.) He typically did not lift more than 20 pounds, walked for about two hours a day, stood for

about four hours a day, and sat for about two hours a day. (AR 70-71.) Plaintiff testified that that "every once in a while" he could have to move a box of paper weighing 20 pounds within the confines of the area in which he was working. (AR 75.) Plaintiff testified that he felt he could no longer do that job because his arthritis is more painful, he experienced "dizziness in [his] head" and unstable on his feet. (AR 71.)

### 3. Vocational Expert's Testimony at the November 2013 Hearing

A Vocational Expert ("VE") testified at the hearing that Plaintiff had past relevant work as a photocopy machine operator, Dictionary of Occupational Titles (DOT) code 207.685-014, from November 2009 through May 2010, which was light exertional work with a specific vocational preparation (SVP)[2] of 2. (AR 75.) He also had past relevant work as a warehouse supervisor from 1994 through 2010, DOT code 929.137-02, which was at a light exertion level and an SVP of 7 but heavy as performed. (AR 75-76.) The ALJ asked the VE to consider a hypothetical individual of the same age, education, work experience, who could perform

> unlimited sitting, stand and walk short distances for a total of six out of eight [hours], lift 10 pounds frequently and 20 occasionally, occasional for kneel, occasional for stairs and ramps, no ladders, ropes, or scaffolds; no manipulative or environmental limitations; limited public interaction; [] fix job site . . . .and require a cane for stability while walking.

(AR 76.) Based on these limitations, the VE testified that such an individual could perform Plaintiff's past relevant work as a photocopy machine operator as performed. (AR 76-77). The VE further testified that such an individual could also work as a small product assembler, DOT code 706.684-022, light exertion level and SVP 2, with about 45,000 jobs nationally and 4,000 jobs in California after an 80% erosion based on the hypothetical question; and blueprint trimmer, DOT code 920.687-038, light exertion level and SVP 2, with about 108,000 jobs nationally and about 11,800 in California after an 80% erosion. (AR 77-78). The VE testified that if the hypothetical individual required a cane to stand, such an individual would not be able to perform

---

[2] Specific vocational preparation, as defined in DOT, App. C, is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. DOT, Appendix C – Components of the Definition Trailer, 1991 WL 688702 (1991). Jobs in the DOT are assigned SVP levels ranging from 1 (the lowest level – "short demonstration only") to 9 (the highest level – over 10 years of preparation). *Id.*

5

Plaintiff's past relevant work as a photocopy machine operator as performed. (AR 79-80.) The VE said that if the same hypothetical individual were to be absent three or more days per month on a consistent basis, he or she would not be able to sustain any jobs in the national, state, or local economy. (AR 80.)

### C.     The ALJ's December 2013 Decision[3]

In a decision dated December 13, 2013, the ALJ found that Plaintiff was not disabled. (AR 23-41.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 416.920. (AR 28-36.) The ALJ decided that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2014, and had not engaged in substantial gainful activity since April 30, 2006, the alleged onset date (Step One). (AR 28.) The ALJ found that Plaintiff had the severe impairments of (1) degenerative joint disease of the bilateral knees, (2) history of aortic aneurism with current Coumadin treatment; (3) stable angina, (4) hypertension, (5) obesity, and (6) anxiety disorder (Step Two). (AR 29.) However, Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in the Listing (Step Three). (AR 29-30.) The ALJ determined that Plaintiff had the residual functional capacity[4]

> to perform light work as defined in 20 CFR §§ 404.1567(b) and 416.967(b), except he is limited to standing and walking short distances with a cane for stability for a total of six hours in an eight-hour day; occasionally kneeling and climbing ramps or stairs; never climbing ladders, ropes, or scaffolds; limited public interaction; and working at a fixed job site.

(AR 30.)

Given his residual functional capacity, the ALJ determined that Plaintiff can continue to perform his past relevant work as a photocopy machine operator as he actually performed it

---

[3] The prior decision that was reviewed by the Appeals Council is not summarized.

[4] Residual functional capacity is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. Social Security Ruling ("SSR") 96-8p. The residual functional capacity assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id.* "In determining a claimant's residual functional capacity, an ALJ must consider all relevant evidence in the record including, *inter alia*, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

(Step Four). (AR 36.) The ALJ disagreed with the Appeals Council that Plaintiff's work at the hospital print shop could not "be considered past relevant work for periods before [Plaintiff] ever performed it," finding that because the photocopy machine operator work was performed "15 years of the date of adjudication and lasted long enough for [Plaintiff] to learn it," it met the "regulatory requirements for past relevant work." (AR 35.) In reaching her conclusions, the ALJ also determined that Plaintiff's subjective complaints were not fully credible. (AR 33.)

The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on July 20, 2015. (AR 1-6.)

### III.     SCOPE OF REVIEW

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

//

//

7

## IV. APPLICABLE LAW

An individual is considered disabled for purposes of disability benefits if he or she is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003). The impairment or impairments must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The regulations provide that the ALJ must undertake a specific five-step sequential analysis in the process of evaluating a disability. In the First Step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting him from performing basic work activities. *Id*. § 404.1520(c). If so, in the Third Step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listing, 20 C.F.R. 404, Subpart P, App. 1. *Id*. § 404.1520(d). If not, in the Fourth Step, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform his past relevant work. *Id*. § 404.1520(f). If not, in Step Five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy. *Id*. § 404.1520(g). If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

//

## V. DISCUSSION

Plaintiff contends that the ALJ's finding at Step Four that Plaintiff had past relevant work as a photocopier machine operator was erroneous because that work was not substantial gainful activity but instead an "unsuccessful work attempt." (Doc. 12, pp. 6-7; Doc. 19, pp. 5-6.) Plaintiff asserts that even assuming the photocopier machine operator work was substantial gainful activity, it cannot be considered past relevant work because it was performed after his alleged onset date of April 30, 2006. (Doc. 12, pp. 5-6; Doc. 19, pp. 4-5.)

The Commissioner responds that the question of whether Plaintiff's work as photocopier machine operator from November 2009 to May 3, 2010 was an unsuccessful work attempt is irrelevant because it pertains to the determination of whether such work would preclude Plaintiff from receiving benefits during the time it was performed – not the question of whether that work was properly deemed Plaintiff's past relevant work. (Doc. 17, p. 6.) The Commissioner contends that the fact Plaintiff performed his work as a photocopier machine operator after the date of alleged onset does not negate the ALJ's finding of past relevant work, as the ALJ properly found that, where, as here, a claimant has applied for disability benefits and has a date last insured in the future, the period for which a claimant's work can be considered past relevant work is 15 years before adjudication (citing Program Operations Manual System (POMS) DI 25001.B.60 and 65). (Doc. 17, p. 6.)

### A. The ALJ's Decision is Internally Inconsistent.

While the parties' arguments touch on the issue, neither Plaintiff nor the Commissioner directly confront the internal inconsistency in the ALJ's decision. In Step Four of the sequential analysis, the ALJ must determine whether Plaintiff has a sufficient residual functional capacity, despite impairments or various limitations, to perform his past work. 20 C.F.R. § 404.1520(f). "Past relevant work" is work that a claimant has "done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." 20 C.F.R. § 404.1560(b)(1); *see also* 20 C.F.R. § 404.1565(a). Substantial gainful activity is "work activity that is both substantial and gainful[.]" 20 C.F.R. § 404.1572. "Substantial work activity is work activity that involves doing significant physical or mental activities." 20 C.F.R. §

9

404.1572(a). A claimant's work may be substantial even if it is done on a part-time basis or if the claimant does less, gets paid less, or has less responsibility than when the claimant worked before. *Id*. Gainful work activity is work activity that a claimant does for pay or profit. 20 C.F.R. § 404.1572(b).

Here, the ALJ found at Step One that Plaintiff has not engaged in substantial gainful activity since his alleged onset date, April 30, 2006. (AR 28.) The ALJ predicated this finding upon the determination that Plaintiff's work activity after that date "did not rise to the level of substantial gainful activity" (AR 28), which supports the Plaintiff's argument that his work at the hospital print shop from 2009 to 2010 was *not* substantial gainful activity (and therefore not past relevant work). Yet, the ALJ also observed at Step One that the Plaintiff's hospital print shop work

> appears to have been performed at substantial gainful activity levels (eight hours a day, five days a week, with pay of $8.00 an hour, which comes out to approximate earnings of $1,280.00 a month, exceeding the $980.00 a month in 2009 and $1,000.00 a month in 2010 needed to meet substantial gainful activity level earnings) and lasted about six months (Ex. 5F; Claimant Testimony).

(AR 29.) This supports the Commissioner's argument that the Plaintiff's hospital print shop work *was* substantial gainful activity and therefore was properly considered past relevant work.

Additional inconsistency arises from the ALJ's findings at Step Four. The ALJ found that Plaintiff "has past relevant work as photocopy machine operator," and that pursuant to the VE's testimony Plaintiff could "continue performing his past relevant work as a photocopy machine operator as actually performed." (AR 35-36.) Responding to the directive from the Appeals Council to clarify on remand when the photocopy machine operator work was performed and whether it was performed at the substantial gainful activity level, the ALJ found that Plaintiff performed the photocopy machine operator work

> for six months from November 2009 to May 2010 – more than long enough to learn an unskilled SVP 2 job – and worked eight hours a day, five days a week, with pay of $8.00 an hour, which comes out to approximate earnings of $1,280.00 a month, exceeding SGA levels of earnings of $980.00 a month in 2009 and $1,000.00 a month in 2010 needed to meet substantial gainful activity level

10

earnings. It was, therefore, substantial gainful activity and qualifies as past relevant work.

(AR 35.)

Thus, at Step One the ALJ found that Plaintiff "has not engaged in substantial gainful activity since April 30, 2006, the alleged onset date" (AR 28), but at the same time found that Plaintiff's work at the hospital print shop from November 2009 to May 2010, "appears to have been performed at substantial gainful activity levels" (AR 29.) Later, at Step Four, the ALJ expressly found that the Plaintiff's work at the hospital print shop *was* "substantial gainful activity and qualifies as past relevant work." (AR 35.) These findings contradict each another, as "past relevant work" must be "substantial gainful activity." *See* 20 C.F.R. § 404.1560(b)(1); *see also id.* § 404.1565(a).

One of these findings is erroneous. One possibility is that the ALJ intended to find that Plaintiff's work at the hospital print shop qualified as substantial gainful activity, which would thereby preclude – and render erroneous – her finding at Step *One* that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. If that were the case, one would expect the ALJ to stop her sequential analysis and make a non-disability finding at that Step. *See* 20 C.F.R. § 404.1520(b) ("If you are working and the work you are doing is substantial gainful activity, we will find that you are not disabled regardless of your medical condition or your age, education, and work experience."); *see also* 42 U.S.C § 1382c (a)(3)(A) and (B); *Stout v. Comm'r,* 454 F.3d 1050, 1052 (9th Cir. 2006) (substantial gainful activity bars a finding of disability); *Corrao v. Shalala*, 20 F.3d 943, 947 (9th Cir. 1994) (no person who is capable of performing substantial gainful employment is entitled to disability benefits, even if he or she has a mental or physical disability).

The ALJ, however, did not stop her analysis, and instead continued to Step Two, suggesting that her finding at Step One of no-substantial-gainful-activity after April 30, 2006, was as intended. Thus, the ALJ may have intended to find that Plaintiff's work at the hospital print shop from 2009 to 2010 was not substantial gainful activity, which would thereby preclude – and render erroneous – her finding at Step *Four* that such work constituted Plaintiff's past

relevant work.[5] It is undisputed, however, that Plaintiff's work at the hospital print shop from November 2009 to May 2010 exceeded the Social Security Administration's monthly earnings guidelines. *See* 20 C.F.R. § 404.1574(b). It is, therefore, presumptively substantial gainful activity. *See id.* § 404.1574(b)(2). Moreover, although Plaintiff attempts to characterize this work as an unsuccessful work attempt, which is not considered substantial gainful activity, *see* 20 C.F.R. § 404.1574(c)(1); *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1221 n.1 (9th Cir. 2009), he has not met his burden on this issue because the evidence does not satisfy the applicable requirements.[6] *See Argueta v. Colvin*, No. 1:15-CV-01110-SKO, 2016 WL 4138577, at *8 (E.D. Cal. Aug. 3, 2016) ("Plaintiff has the burden of establishing that her previous work qualifies as an unsuccessful work attempt.) (citing *Seitz v. Astrue*, No. CIV.A.3:08CV355HEH, 2009 WL 2392159, at *8 (E.D. Va. Aug. 4, 2009) and *Scott v. Comm'r of Soc. Sec.*, 899 F. Supp. 275, 277 (S.D.W. Va. 1995)).

//

---

[5] The ALJ did not make an alternative finding at Step Five that there is other work in the economy that Plaintiff is able to perform.

[6] A period of work constitutes an unsuccessful work attempt if it satisfies three requirements. First, the claimant must have experienced a significant break in the continuity of his work before the work attempt. 20 C.F.R. § 404.1574(c)(2). Second, if the claimant's work attempt lasts between three and six months, he must show that his work ended, or was reduced below substantial gainful activity earnings level, within six months "because of [his] impairment or because of the removal of special conditions which took into account [his] impairment and permitted [him] to work." 20 C.F.R. § 404.1574(c)(4). Third, one of the following four additional four factors must also be satisfied: (i) The claimant was frequently absent from work because of his impairment; (ii) The claimant's work was unsatisfactory because of his impairment; (iii) The claimant worked during a period of temporary remission of his impairment; or (iv) The claimant worked under special conditions that were essential to his performance and these conditions were removed. *Id. See also Hodges v. Colvin*, No. CV 13-03215-MAN, 2015 WL 898341, at *5 (C.D. Cal. Mar. 3, 2015); *Galanos v. Astrue*, No. 3:10-CV-05849-JCS, 2013 WL 1365901, at *10-11 (N.D. Cal. Apr. 3, 2013); SSR 05-02, 2205 WL 6491604, at *2.

Here, Plaintiff did not present any evidence or testimony at either the November 2011 or the November 2013 hearing to suggest that he satisfied the third requirement. He did not indicate that, as a result of his impairment, he was frequently absent from work or performed unsatisfactory work. He did not allege that he worked during a period of temporary remission of his impairment. He did not claim that he worked under special conditions that were essential to his performance and these conditions were removed. Even in his briefing, Plaintiff makes none of these assertions, premising his argument solely on the grounds that he "stopped performing [the print shop job] because the pain of his arthritis became worse." (Doc. 19, 6:2-3.) The evidence put before the ALJ, however, was that Plaintiff stopped working at the hospital print shop in May 2010 because of "other reasons," specifically that the position was a training period of six months. (AR 280.) Plaintiff points to his testimony at the November 2013 hearing in support of his argument that he stopped working at the hospital print shop due to his impairment, but that testimony does not support his argument. Plaintiff did <u>not</u> testify as to why he stopped working at the hospital print shop in May 2010; instead, he testified regarding his belief that his current condition prevented him from performing that job *as of the date of the hearing in November 2013.* (AR 71 ("Q And what is it about your condition that makes you feel you could not do that job now? A I think my condition's just gotten worse. The arthritis, I think is more painful now. And I'm experiencing dizziness in my head more often. So I just feel unstable on my feet.").)

**B.    Because the circumstances of this case suggest that further administrative review could remedy the ALJ's errors, remand is appropriate.**

Material inconsistencies and ambiguities in the ALJ's decision generally warrant remand. *See Perez v. Astrue*, 250 Fed. App'x. 774, 776 (9th Cir. 2007) (remanding in part because the ALJ's findings were "internally inconsistent") (unpublished); *Bridges v. Colvin*, No. CV 13-5618-E, 2014 WL 1370369, at *3 (C.D. Cal. Apr. 8, 2014) (same); *Rodriguez v. Astrue*, 2011 WL 1103119, at *9 (E.D. Cal. Mar. 22, 2011) ("[R]emand for further proceedings is proper due to the ambiguity of the ALJ's decision. . . ."); *Elias v. Astrue*, No. CIV 10-244-TUC-CKJ, 2011 WL 1329967, at *1 (D. Ariz. Mar. 9, 2011), at *7 (finding the ALJ's decision not supported by substantial evidence and recommending remand because the ALJ's decision was "internally inconsistent"), *report and recommendation adopted*, No. CIV 10-244-TUC-CKJ, 2011 WL 1322083 (D. Ariz. Apr. 7, 2011); *Gonzalez v. Astrue*, No. CV 08-6957-CT, 2009 WL 577279, at *3 (C.D. Cal. Mar. 5, 2009) ("[R]emand is necessary for the ALJ to clarify the ambiguity within his opinion. . . ."); *Chenault v. Astrue*, No. CV 07-7690-E, 2008 WL 2705573, at *1-3 (C.D. Cal. July 10, 2008) (remanding because the ALJ's findings were "internally inconsistent"). *See also Regennitter v. Commissioner*, 166 F.3d 1294, 1297 (9th Cir. 1999) (materially "inaccurate characterization of the evidence" warrants remand); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir.1990) ("[W]e are wary of speculating about the basis of the ALJ's conclusion. . . ."). *Accord Banks v. Astrue*, No. CIV.A. 11-2549-JWL, 2013 WL 172858, at *6 (D. Kan. Jan. 16, 2013) (finding "no evidentiary basis upon which the ALJ might find that Plaintiff could return to past relevant work" where the ALJ's finding that Plaintiff did not engage in substantial gainful activity after December 1, 2005, precluded his finding that work performed after that date constituted past relevant work.)  When ambiguities or inconsistencies in the ALJ's decision clearly arose from typographical errors, however, remand is unnecessary. *Bridges*, 2014 WL 1370369, at *3 (citing *Henderson ex rel. Henderson v. Apfel*, 179 F.3d 507, 514 (7th Cir.1999) (no remand necessary where the ALJ erroneously referred to "Ex. B at 5" while intending to refer to "Exhibit B-5")).

//

In the present case, regardless of whether the ALJ's error occurred at Step One or Step Four (which the Court is unable to determine on the present record), no mere correction of typographical mistake appears capable of dispelling the ambiguities and reconciling the inconsistencies in the ALJ's decision. Because the decision of the ALJ was internally inconsistent, the final decision of the Commissioner is not supported by substantial evidence and this case should be remanded to the Commissioner for further proceedings. *See McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989) (Remand is appropriate if the record is incomplete and additional proceedings would remedy defects in the Commissioner's decision.)

## VI.   CONCLUSION AND ORDER

Based on the foregoing[7], the Court finds that the ALJ's decision is not supported by substantial evidence and is, therefore, VACATED and the case is REMANDED to the ALJ for further proceedings consistent with this order. The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Jesse Guerra and against Defendant Carolyn W. Colvin, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **September 27, 2016**                    /s/ *Sheila K. Oberto*
                                                                    UNITED STATES MAGISTRATE JUDGE

---

[7] The Court has not reached any other issue raised by Plaintiff except to determine that reversal with a directive for the payment of benefits would not be appropriate at this time.